LOEB & SCHOENFELD CO. v. ATLAS EMBROIDERY WORKS et al.
(two cases).

(District Court, E. D. New York.    March 6, 1915.)

Nos. 16, 17.

PATENTS &⟶328—VALIDITY AND INFRINGEMENT—EMBROIDERING MACHINES.
    The Groebli patents, Nos. 593,206, 609,429, 593,208, 607,848, 618,458, and 637,458, all relating to embroidering machines operated by jacquard mechanism, and parts thereof, *held* valid, as limited by the prior art, but not infringed.

In Equity. Suits by the Loeb & Schoenfeld Company against the Atlas Embroidery Works, the Nassau Novelty Manufacturing Company and Ignatz Schuster. Decree for injunction in first case, and for defendants in second case.

James R. Sheffield, Ramsay Hoguet, and James J. Cosgrove, all of New York City, for plaintiff.

Max D. Ordmann, of New York City (William Houston Kenyon, of New York City, of counsel), for defendants.

CHATFIELD, District Judge. These actions involve charges of infringement of six patents taken out by one J. A. Groebli, and regularly assigned to the plaintiff, for improvements in or to the complicated mechanism called an "embroidering machine."

The defendant the Atlas Embroidery Works is charged with having imported into the United States, and caused to be installed and used in the factory of the defendant the Nassau Novelty Manufacturing Company, certain embroidering machines which had been made in Germany by the Vogtlandische Machinen Fabrik Aktien-Gesellschaft, and which are claimed to infringe the Groebli patents. The defendant the Nassau Company is charged with infringement through the installation of these looms and their operation in the factory of the Nassau Company in Brooklyn; while Ignatz Schuster, the president of the Nassau Company, is charged individually with personal responsibility for these several alleged acts of infringement.

The defendants deny infringement, allege invalidity and unpatentability, and each defendant (except the Nassau Company) alleges that its or his part of the acts complained of is not such as to be sufficient upon which to base a decree, even if the plaintiff's patents be held valid and infringement by the machines be shown.

It appears from the record that during the 17 years between 1894 and 1911, the inventor, J. A. Groebli, whose father had built and perfected many devices in the embroidery art (and who had himself pursued the same line of research and application), controlled, through letters patent No. 528,632, of November 6, 1894, in the United States, substantially exclusive rights for operating embroidering machines with a practical and satisfactory jacquard, attached to the same style of machines as had been previously and were still operated with a pantograph, both in this country and in Europe. The patent for this jacquard device was also taken out in various European countries, and rights thereunder licensed in Europe. Embroidering machines were manufactured by concerns in Europe, such as Saurer in Arbonne, Switzerland, Rieter in Switzerland, Dietrich at Plauen, and Robert Zahn, who was then building machines for a company known as the Stickerei-Feldmuhl, which operated an embroidery factory at Rorschach.

Mr. Robert Zahn, in the year 1897, was working in Zurich, Switzerland, with Mr. Groebli, who went over to explain his jacquard attachment and demonstrate it with a Saurer machine, and also with a Dietrich machine, in the factory at Plauen, which has since grown into the Vogtlandische concern, the actual builder of the machines which are alleged to infringe as the basis of the present action.

Loeb and Schoenfeld, the individuals who own the Loeb & Schoenfeld Company, plaintiff in these actions, have business associations or interests with the Stickerei-Feldmuhl embroidery factory, and it appears from the testimony that in Europe the manufacture of machines by the different parties, including the Vogtlandische company, is covered by an agreement which, however, does not affect the control by the plaintiff of any rights in the United States to the Groebli patents which have been conveyed to it by assignment. In fact, the record shows that certain Vogtlandische machines have been imported from Europe by the plaintiff, for use in connection with its own machines constructed according to the Groebli patents.

But the testimony shows further that the Vogtlandische company apparently do not sell machinery involving the claims of the plaintiff under the Groebli patents for importation into the United States, and do not themselves import, unless by agreement with the plaintiff.

The Groebli jacquard patent, No. 528,632, of November 6, 1894, expired in 1911. A concern in Brooklyn, called the Atlas Embroidery Works, occupied a rented plant on Van Brunt street, and manufactured various kinds of embroidery with Vogtlandische pantograph machines. Ignatz Schuster, the individual defendant in this action, had been president of the Atlas Company, and during the years 1910 and 1911 sought to buy from the Vogtlandische company embroidering machines with Zahn jacquards or automats. The change in the tar-

iff of the United States, and the anticipated expiration of the Groebli jacquard patent, were motives in Schuster's mind, and he wished to have the Atlas Company undertake the operation of the jacquard machines. He did not succeed in the purchase of the Zahn automat, but testified that he was laughed at, and then threatened, upon trying to purchase them for importation to the United States.

The embroidering machines which he did purchase with pantograph attachments, were not needed by the Atlas Company, and later Schuster, in connection with his uncle, in Dresden, Germany, planned a new concern, to be called the Nassau Company, to undertake business both in the United States and in Germany. Through his uncle, Schuster purchased from an individual named Amalie Riessner, widow of Frederich Riessner, eight Zahn automats and three Vogtlandische machines of the newest type, which were sent to the United States in their original cases, and arrived here in the month of December, 1911. No evidence is given as to the way in which the widow Riessner purchased these machines from the Vogtlandische company, but it is evident that she was used by Schuster and his uncle to secure the Zahn automats which he had been unable to purchase for exportation to the United States.

In the meantime, Schuster's proposition to use the jacquards had aroused opposition in the Atlas Embroidery Works, and Schuster had resigned as president, but retained his stock and general connection therewith. A new company, called the Nassau Novelty Manufacturing Company, had been incorporated, with $300 capital stock, by three associates of Mr. Schuster. This capital stock was immediately increased to $5,000, and was issued to Schuster in return for machinery which he purchased from the Atlas Embroidery Works. Later the capital stock was further increased to $25,000, and this again taken by Schuster in return for the machines imported from Europe or purchased by him from the Atlas Company. The Nassau Company proceeded to occupy a portion of the Van Brunt street plant of the Atlas Company, and has since maintained a separate factory and office, but with the same entrance as that used by the Atlas Company. It has manufactured lace or embroidery by removing after completion the fabric on which the design is worked, and has disposed of its product either to or through the Atlas Company.

The president of the Atlas Company, one Spiro, has assisted Mr. Schuster in the operations of the Nassau Company, and Carl Schuster, a cousin, has been foreman and manager of the Nassau factory. The eight automats and five embroidering machines imported from Europe, with the five machines purchased from the Atlas Company, were installed in the Nassau portion of the plant during the year 1912. One of the machines was completed and tested in February or March, and all were in place prior to the time of trial.

The Atlas Company and its present officers have apparently endeavored to leave with the Nassau Company and Ignatz Schuster all responsibility for the use of the embroidering machines with the Zahn automat (or jacquard), but nevertheless helped Schuster at all steps in establishing the Nassau plant, and in enabling it to continue its busi-

ness and dispose of its product. While the Atlas Company has operated nothing but pantograph machines in its own factory, and while the Nassau Company has been used by Schuster for all actual transactions relating to the jacquard, nevertheless it would seem that the Atlas Company, through its officers, has had a part in the establishment and maintenance of the Nassau factory, and therefore brought itself within the scope of injunction, if the importation and use of the embroidering machines with the jacquard are found to be an infringement of the Groebli patents.

Ignatz Schuster is plainly responsible as an individual for the entire operations which are complained of in this action, and is therefore properly joined as a defendant herein. In case of decree, the actual responsibility of the Atlas Company for any part of the damages proved, would be a matter to be disposed of on accounting or by the final decree, and would depend upon the actual showing of responsibility made by the Nassau Company and Schuster. The action, therefore, should not be dismissed as to any of the parties upon the question of responsibility, but we must proceed to consideration of the patents and the charges of infringement as against all the defendants.

*These are two suits involving the validity and infringement of six patents issued to J. A. Groebli for embroidering machines and parts thereof which are operated by jacquard mechanism, as distinguished from the pantograph or manually controlled machines of the prior art. The patents in suit are No. 593,206, claims 1, 2, and 5, issued November 9, 1897, on application filed November 10, 1896; No. 609,-429, claims 1, 2, and 3, issued August 23, 1898, on application filed December 31, 1897; No. 593,208, claims 1, 3, 4, 5, 9, 10, 13, 14, 15, 25, 27, and 28, issued November 9, 1897, on application filed March 19, 1897; No. 607,848, claims 1–6, 8, and 9, issued July 26, 1898, on application filed January 15, 1898; No. 618,458, claims 1 and 3; and No. 637,458, claims 1, 5, 6, and 7. These patents cover a series of mechanisms of complicated character, and, while none of them are basic, each shows invention, and is valid, as limited by the prior art and by each other. While the machine of defendants as built infringes patent No. 609,429 for a festoon hook, such device has been removed and has not been used by defendant, and none of the other patents as limited are shown to have been infringed.

Injunction granted against infringement of No. 609,429, without damages, and bill dismissed as to all other patents.

---

* The paragraph following the asterisk has been inserted, instead of the long discussion of the devices, claims, and prior art patents from the opinion as filed in the court.—T. I. C.